UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS SOSA GUERRERO, ASHLEY SOSA, and A.S., a minor, by and through her general guardian, ASHLEY SOSA,<br><br>Plaintiffs,<br><br>v.<br><br>CAMP PENDELTON & QUANTICO HOUSING, LLC, a Delaware limited liability company; and LPC PENDELTON QUANTICO PM, LP, a Delaware limited partnership; LIBERTY MILITARY HOUSING HOLDINGS, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 5:22-cv-00931-WLH-KK<br><br>**ORDER REGARDING MOTION FOR PERMANENT INJUNCTION [96] AND MOTION FOR ATTORNEY'S FEES [97]** |

Plaintiffs filed a Motion for Permanent Injunction (Permanent Inj. Mot., Docket No. 98) and a Motion for Attorney's Fees. ("Fees Motion," Docket No. 97). On December 18, 2023, the Court held a hearing and heard oral argument from all parties. For the following reasons, the Court **DENIES** the Motion for Permanent Injunction and **GRANTS** in part the Fees Motion.

## I. BACKGROUND

### A. Factual Background

The parties and Court are familiar with the facts of this case, which was recently tried before this Court. The Court therefore declines to recount the factual background of the case at length. In short, Plaintiffs Luis Sosa Guerrero, Ashley Sosa, and their minor daughter, A.S. (collectively, "Plaintiffs") alleged that defendants Camp Pendelton and Quantico Housing, LLC and LPC Pendelton Quantico PM, LP (together, "Defendants"), who owned the military housing where Plaintiffs lived, refused to provide their daughter with a reasonable accommodation for her learning disability. (Compl., Docket No. 1 ¶ 15).

### B. Procedural History

Plaintiffs initially brought claims for violations of the Fair Housing Act ("FHA"), California's Fair Employment and Housing Act ("FEHA"), California's Unruh Civil Rights Act, Unfair Business Practices, and Negligence. (Compl., Docket No. 1). Plaintiffs sued Camp Pendelton & Quantico Housing, LLC, LPC Pendelton Quantico PM, LP, and Liberty Military Housing Holdings, LLC. (*Id.*). On the eve of trial, however, Plaintiffs dismissed Liberty Military Housing Holdings, LLC, leaving only the Defendants in the suit. Plaintiffs also voluntarily dismissed their Unruh Civil Rights Act, Unfair Business Practices, and Negligence Claims, leaving only the FHA and FEHA claims at issue. (Opp'n to Fees Mot., Docket No. 99 at 16). Those claims were tried before a jury in this Court, and the jury found that Defendants violated the FHA and FEHA, awarding $98,000 in compensatory damages to A.S., and $0 to Luis Sosa Guerrero and Ashley Sosa respectively. (Special Verdict Form 1, Docket No. 86). The jury declined to award punitive damages after a second phase of trial focused solely on the question of punitive damages. (Special Verdict Form 2, Docket No. 93).

## II. DISCUSSION

For the following reasons, the Court **DENIES** Plaintiffs' Motion for Permanent Injunction and **GRANTS** in part Plaintiffs' Motion for Attorney's Fees.

### A. Permanent Injunction Motion[1]

Plaintiffs seek a permanent injunction preventing further discrimination and mandating certain affirmative relief, such as training, detailed in the Proposed Order at Docket No. 96-2. The Court finds that Plaintiffs have failed to meet their burden to establish that such relief is warranted here, and so **DENIES** Plaintiffs' Motion for Permanent Injunction. (Permanent Inj. Mot., Docket No. 96-1).

Under the Fair Housing Act, a court which finds that a discriminatory housing practice "has occurred or is about to occur" may grant "any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate)." 42 U.S.C. § 3613(c)(1). An injunction "is an extraordinary remedy that may only be awarded upon a clear showing that the moving party is entitled to such relief." *Server Tech., Inc. v. Am. Power Conversion Corp.*, 2017 WL 2181101, at *3 (D. Nev. May 12, 2017) (cleaned up) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*)); *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). The party seeking a permanent injunction must demonstrate: (1) it has suffered irreparable harm; (2) monetary damages are inadequate; (3) the balance of hardships is in the moving party's favor; and (4) the public interest would not be disserved by a permanent injunction. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *eBay*, 547 U.S. at 391.

---

[1] At the December 18, 2023, hearing, Plaintiff submitted to the portion of the Court's tentative order concerning the Preliminary Injunction Motion, which the Court adopts as its final order here.

In their Reply in support of Permanent Injunction, (Reply, Docket No. 102), Plaintiffs cite *Silver Sage Partners v. City of Desert Hot Springs* for the proposition that the first prong of the permanent injunction analysis—irreparable harm—should be presumed upon the finding of a Fair Housing Act violation. 251 F.3d 814, 827 (9th Cir. 2001). District courts have debated, however, whether that presumption from *Silver Sage* survives the Supreme Court's more recent *eBay v. MercExchange* case. 547 U.S. 388 (2006). *See, e.g.*, *Ariz. Recovery Housing Ass'n v. Ariz. Dep't of Health Servs.*, 462 F. Supp. 3d 990, 998 (D. Ariz. 2020) ("The Court need go no further than *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006), however, to conclude that the plain language of the FHA's injunction-authorizing provision, 42 U.S.C. § 3613(c)(1), does not mandate a presumption of irreparable harm"). This Court need not reach the question, however, of whether the presumption of irreparable harm flowing from an FHA violation survives *ebay*, a question the Ninth Circuit has not yet addressed. Even if irreparable harm is presumed, the Plaintiffs have failed to establish that the "extraordinary remedy" of a permanent injunction is appropriate here. *Server Tech., Inc.*, 2017 WL 2181101, at *3.

Regarding the second permanent injunction prong—that monetary damages are inadequate—Plaintiffs have not made any showing or arguments in their motion that the damages the jury awarded are inadequate to remedy Plaintiffs' injury. Indeed, that the jury declined to award punitive damages indicates that any injury sustained by Plaintiffs was not egregious. *See, e.g.*, *Rogers v. 66-36 Yellowstone Blvd. Co-op Owners, Inc.*, 599 F. Supp. 79, 83 (E.D.N.Y. 1984) ("Most cases…by individual minority homeseekers that have resulted in a permanent injunction have been based on conduct that was flagrant enough to also justify an award of punitive damages."). The third prong—the balance of hardships—also does not tip in the moving party's favor; Defendants have already voluntarily bolstered their fair housing act protocols and trainings to prevent further hardships associated with housing discrimination. (Clancy

Decl., Docket No. 98-1). Finally, under the fourth prong, the public interest would be disserved by a permanent injunction because it would impede on the ability of the military Defendants to "manag[e] their own affairs, consistent with the Constitution." *Gilmore v. People of the State of California*, 220 F.3d 987, 1005 (9th Cir. 2000) (internal quotation omitted). The Defendants' General Counsel has already expressed remorse for what happened to the Plaintiffs in this case and indicated that Defendants have finalized new FHA operating procedures that he believes "will fully remedy all arguable failures…that ultimately led to this action being filed." (Clancy Decl., Docket No. 98-1 ¶ 12 (enumerating proposed changes to operating procedure)). The Court is loath to impede on military operations by requiring an equitable remedy that exceeds the harm the jury found in this case. For those reasons, the Court **DENIES** Plaintiffs' Motion for Permanent Injunction.

### B. Attorney's Fees Motion

The Court **GRANTS** in part Plaintiffs' Motion for Fees. (Fees Mot., Docket No. 97).

#### i. Legal Standard: Fees under the FHA and FEHA

The FHA says that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fees and costs." 42 U.S.C. § 3613(c)(2). FEHA similarly provides that "the court may, at its discretion, award the prevailing party…reasonable attorney's fees and costs…" Cal. Gov't Code § 12989.2. Prevailing parties generally include those who win only nominal damages. *Farrar v. Hobby*, 506 U.S. 103, 115 (1992).

Under both statutes, "the customary method of determining the permissible amount of attorneys' fees…is the 'lodestar' method." *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006) (citing *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996)).[2] The lodestar method requires a court to "multipl[y] the number of

---

[2] Both *Ballen v. City of Redmond* and *Farrar v. Hobby* concern an award of attorneys' fees pursuant to 42 U.S.C. § 1988, but district courts in the Ninth Circuit have

hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* (cleaned up). The reasonable hourly rate is the "prevailing market rates in the relevant community," which is generally "the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). The Court may rely on attorney declarations when determining the reasonable rate. *See, e.g.*, *Zargarian v. BMW of North Am., LLC*, 442 F. Supp. 3d 1216, 1227−28 (C.D. Cal. 2020) (relying on an attorney affidavit that cited previous cases for each attorney); *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) ("[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill."). When multiplying the reasonable rate times the hours reasonably expended, "[t]he district court should exclude hours that were not 'reasonably expended.'" *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) ("[P]adding in the form of inefficient or duplicative efforts is not subject to compensation.").

Though federal courts and California's courts take similar approaches to calculating the lodestar, they differ in their approaches to fee enhancements. Under federal law, "[t]he lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward[3]

---

"treat[ed] motions for attorneys' fees under the FHA, FEHA, and § 1988 largely identically." *Roman v. MSL Capital, LLC*, No. EDCV 17-2066 JGB (SPx), 2019 WL 3017765, at *6 n.2 (C.D. Cal. July 9, 2019); *see also A.H.D.C. v. City of Fresno*, No. CV-F-97-5498 OWW SMS, 2002 WL 34575401, at *11 (E.D. Cal. Oct. 17, 2002) (noting that Congress, in the FHA, "adopted language that parallels the attorney's fee provisions in the 1964 Civil Rights Act and in 42 U.S.C. § 1988," and that California courts, when deciding whether to award fees under FEHA have "adopted the methods and principles developed by federal courts…").

[3] To assess whether it is necessary to assess a fee enhancement under the FHA, the district court uses the "*Kerr* factors that are not already subsumed in the initial lodestar calculation." *Morales*, 96 F.3d at 363−64. The *Kerr* factors are "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the

only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guar. Mut. Life Co.*, 214 F. 3d 1041, 1045 (9th Cir. 2000) (cleaned up). Fee enhancements for contingent risk are not permitted under the FHA. *See City of Burlington v. Dague*, 505 U.S. 557, 567 (1992).

However, in cases where "a plaintiff succeeds on both federal and state claims that support a fee award"—as here—the state law method for calculating fees "is available." *Chaudry v. City of Los Angeles*, 751 F.3d 1096, 1112 (9th Cir. 2014) (citing *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478−79 (9th Cir. 1995)). "California law allows for a multiplier of the lodestar to compensate the risk of contingent representation." *Id.* (citing *Ketchum v. Moses*, 104 Cal. 4th 1122, 1136 (2001)). Other factors to consider under California law when determining whether to apply a multiplier include "(1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award; (4) the fact that an award against the state would ultimately fall upon the taxpayers; (5) the fact that the attorneys in question received public and charitable funding for the purpose of bringing law suits

---

skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Id.* at 363 n.8 (citing *Kerr v. Screen Guild Estras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). The factors subsumed by the lodestar analysis, and not to be double counted in the fee enhancement analysis are "'(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, … (4) the results obtained, and (5) the contingent nature of the fee agreement.'" *Id.* at 364 n.9 (quoting *Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir. 1988)).

of the character here involved; (6) the fact that the monies awarded would inure not to the individual benefit of the attorneys involved but the organizations by which they are employed; and (7) the fact that in the court's view the two law firms involved had approximately an equal share in the success of the litigation." *Serrano v. Priest* [*Serrano III*], 20 Cal.3d 25, 49 (1977) (en banc). A trial court should not, however, "consider these factors to the extent they are already encompassed within the lodestar." *Ketchum*, 24 Cal. 4th at 1139−40 ("Otherwise, the fee award will result in unfair double counting and be unreasonable.").

### ii. Analysis

Here, Plaintiffs seek a total fee award of $1,124,182.84. (Fees Mot., Docket No. 97-1 at 22−23). Plaintiffs' counsel calculates that sum by estimating a reasonable hourly rate for Plaintiffs' counsel, Stuart Fagan, of $890 per hour, multiplying that rate by 977.9 hours billed, using a lodestar multiplier of 1.25, and then adding to the proposed fee award $14,240 for anticipated time for writing a reply in support of the Fees Motion and $22,029.09 for out-of-pocket expenses.[4] *Id.*

In opposition, Defendants argue that Mr. Fagan's fee request is so inflated as to be wholly unreasonable such that it should be rejected in its entirety. (Fees Opp'n, Docket No. 99 at 17). In the alternative, Defendants argue that $890 per hour is an unreasonable rate for Mr. Fagan and instead propose a rate of $425 per hour. (*Id.* at 20). Defendants also argue that Mr. Fagan's timesheets are padded and propose that the Court make a downward adjustment. (*Id.* at 21 ("Because Plaintiffs' entire fee request…is obviously inflated, it's impossible to recommend a targeted discount. As a result…[Defendants] ask[] that the Court use its best judgment when coming up with an appropriate downward adjustment.")). Defendants also argue that a fee

---

[4] Once the Court enters judgment, Plaintiffs separately plan to file an application for the clerk to tax costs in the amount of $17,409.86, and to amend the judgment to provide that Ashley Sosa and Luis Sosa Guerrero each be awarded $1 in nominal damages instead of the $0 the jury awarded. (Fees Mot., Docket No. 97-1 at 22).

enhancement is inappropriate in this case, (*id.* at 21−22). Finally, Defendants argue that the fee award should exclude travel expenses of $6,832.09 since, they claim, out-of-state counsel was unnecessary. (*Id.* at 23).

          a.    <u>Reasonable Rate</u>

In regard to determining a reasonable rate for the lodestar calculation, the Court considers the following:

- Mr. Fagan's declaration, in which he attests that $890 per hour is the rate he "would have billed to a fee-paying client," (Fagan Decl., Docket No. 97-2 ¶¶ 2, 3 (also attesting to over thirty years of litigation practice, twenty-five of which were "almost exclusively devoted to the area of fair housing litigation"));
- Another local attorney declaration stating that $890 is "reasonable and within the range of rates charged by attorneys in the Central District of similar experience in matters of similar complexity." (Brancart Decl., Docket No. 97-8 ¶ 10);[5]

---

[5] Plaintiffs also submitted a declaration by a fee expert, Ms. Carol Sobel, which attested to the reasonableness of Mr. Fagan's proposed rate. (Sobel Decl., Docket No. 97-9). Defendants object to the testimony and opinions of Ms. Sobel because it "is submitted as purported expert testimony…and should be excluded in its entirety as undisclosed expert witness testimony." (Objections to Evid., Docket No. 99-5 at 2). The objection is sustained. The Court agrees that Ms. Sobel's declaration and opinions constitute undisclosed expert testimony and so does not consider them. Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion…").

Despite the exclusion of the Sobel declaration, Plaintiffs' counsel, at the hearing, requested that the Court take judicial notice of the Consumer Price Index for Los Angeles cited in Paragraph 22 of Ms. Sobel's declaration. The Court declines to do so because the link in that paragraph of Ms. Sobel's complaint does not work. *See* Fed. R. Evid. 201(c)(2) (noting that the Court must take judicial notice upon request only if the court is "supplied with the necessary information.").

9

- Attorney declarations filed in support of Plaintiffs' counsel's fees that demonstrate Plaintiffs' counsel's skill and expertise related to housing discrimination litigation, among other things. (*See, e.g.*, Brancart Decl., Docket No. 97-8 ¶ 6 ("I have known Stuart Fagan for more than two decades…Mr. Fagan enjoys and [sic] excellent reputation in the fair housing field."); Kilroy Decl., Docket No. 97-21 ¶ 8 ("Mr. Fagan's expertise coupled with his exhaustive preparation made him one of the most challenging opposing counsel with whom I have dealt."); Peffer Decl., Docket No. 97-22 ¶ 3 ("I am familiar with the prevailing custom in Los Angeles for attorneys to bill at full hourly rates for time necessarily spent traveling in connection with a case."); Borelli Decl., Docket No. 97-23 ¶ 4 (noting the "shortage of competent attorneys" in the fair housing context and averring that "Mr. Fagan's work in the fair housing field…has been invaluable"); Harrington Decl., Docket No. 97-25 ¶ 6 (averring that Mr. Fagan is knowledgeable in the fair housing discrimination context));

- The declaration of Defendants' counsel, Rebecca Fortune, averring that she currently bills her time at an hourly rate of $425 after practicing for twenty years in Southern California, and that she has "never encountered a real estate litigation attorney who billed more than $550 per hour." (Fortune Decl., Docket No. 99-1 ¶ 44); and

- Relevant fee awards in the Central District,[6] which have found a wide range of appropriate hourly rates. *See, e.g.*, *Zuniga, et al., v. Western Apartments*, No. 13-04637-JFW-JC, 2014 WL 6655997, at *2 (C.D. Cal. Nov. 24, 2014)[7] (finding Mr.

---

[6] Defendants argue that the Court should look to reasonable rates in the Eastern District of California, where the case was brought, rather than in the Central District of California, where the case was tried. The Ninth Circuit has reasoned, however, that the appropriate forum for purposes of assessing the prevailing market rate is generally "the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). The Court finds no reason to depart from that general rule here.

[7] At the hearing on the Fees Motion, the Plaintiffs' counsel argued that the Court should not use *Zuniga v. Western Apartments*, 2014 WL 6655997, as a yardstick for measuring a reasonable fee given its vintage. The Court agrees. *See Bell v. Clackamas County*, 341 F.3d 858, 869 (9th Cir. 2003) (holding that it was an abuse of

Fagan's hourly rate of $450 to be reasonable in 2014); *Shevtsov v. Venture Capital West L.P., et al.*, No. 2:21-cv-03134, 2023 WL 2681977, at *5 (C.D. Cal. Jan. 9, 2023) (finding that a $350 hourly rate was reasonable for a fair housing act practitioner with twenty years of litigation experience); *Zeigler v. County of San Luis Obispo*, No. CV 17-9295-MWF-AFMx, 2023 WL 3432238, at *5 (C.D. Cal. Mar. 1, 2023) (finding a $750 hourly fee to be reasonable for an "equity, named partner of" a law firm in a civil rights litigation) (citing the 2022 Real Rate Report, published by Wolters Kluwer).

The Court finds that Plaintiffs have failed to meet their burden that a proposed hourly rate of $890 is appropriate here. Despite Mr. Fagan's undisputed expertise in the fair housing field, the only record evidence that $890 reflects the prevailing market rate (excluding the Sobel opinions and declaration, *supra* note 5) is Mr. Fagan's own declaration and the declaration of Mr. Brancart who—as Defendants pointed out during oral argument—has a personal interest in the rates determined to be prevailing in this district, as a local housing discrimination litigator himself. (*See* Brancart Decl., Docket No. 97-8 ¶ 4). Moreover, Defendants have offered evidence that attorneys in the housing litigation context, including Defendants' counsel Rebecca Fortune, garner the more modest rate of approximately $425 per hour. (Fortune Decl., Docket No. 99-1 ¶ 44) (also noting that she is aware of attorneys charging up to $550 per hour for similar work in this district). Considering Mr. Fagan's skills, expertise, the attorney affidavits attesting to customary rates in this district, awards in similar cases, *see Zeigler*, 2023 WL 3432238, at *5 (describing the "median" hourly rate for a Los

---

discretion "to apply market rates in effect more than two years *before* the work was performed" in the case at bar) (emphasis in original). The Court mentions this case only insofar as the Plaintiff raised it in its Fees Motion, (Fagan Decl., Docket No. 97-2 ¶ 4); *see also United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (explaining that "rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate"), but acknowledges that a market rate in 2014 is not equivalent to a prevailing rate in 2024.

11

Angeles litigation partner as $725), and the run-of-the-mill nature of this case, notwithstanding challenges inherent to housing discrimination litigation, (*see, e.g.*, Brancart Decl., Docket No. 97-8 ¶ 8 ("Housing discrimination cases are uniquely complicated and require a significant commitment of time, energy, and effort to litigate successfully…")), the Court finds that an appropriate hourly rate for Mr. Fagan is $750.

In determining this rate, the Court underscores that it does not rely on the contingent nature of Plaintiffs' counsel's engagement in this case when setting the reasonable fee, as urged by the Plaintiff's counsel at oral argument. Because the Court considers the contingent nature of the representation here when assessing a fee enhancement as permitted by California law, *infra* Section II.B.ii.c, accounting for contingent risk in the lodestar also would "result in unfair double counting and be unreasonable." *Ketchum*, 24 Cal. 4th at 1139−40.

b. <u>Hours Reasonably Expended</u>

Once the Court establishes a reasonable rate—here, $750 per hour—the lodestar method requires a court to "multipl[y] the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Ballen*, 466 F.3d at 746. The Defendants object to several of Plaintiffs' counsel's time entries as inappropriately padded, however. (*See* Opp'n to Fees Mot., Docket No. 99 at 13−15). The Court agrees that some of the time Plaintiffs seek to recover in the fee award was not 'reasonably expended,'" *McGrath*, 67 F.3d at 252, and so reduces the following time entries as follows:

- 20 of the 47.4 hours that Plaintiffs' counsel billed for preparing his opening statement, as the Court finds that amount of time excessive. (Fortune Decl., Docket No. 99-1 ¶ 43.d);

- 30 of the 51.3 hours that Plaintiffs' counsel billed for preparing to cross-examine witness Marie Reed at trial, which should have been a straightforward task. (*Id.* ¶ 43.e);
- 67.5 hours of summarizing deposition testimony for various witnesses. (*Id.* ¶ 43.c).

Accordingly, the Court omits 117.5 hours—20 plus 30 plus 67.5—from the 977.9 hours for which Plaintiffs seek fees in their Fees Motion.

    The record here also reflects that this case likely could have, and should have, settled sooner and for a greater amount of damages than the jury ultimately awarded. For example, on May 2, 2023, Plaintiffs turned down a settlement offer for $200,000, (*id.* ¶ 37), but Plaintiffs ultimately recovered a lesser total damages award of $90,800 from the jury. (Verdict Phase 1, Docket No. 85 (providing for a $90,800 verdict)). A district court may consider settlement negotiations "for the purpose of deciding a reasonable attorney fee award…" *Ingram v. Oroudjian*, 647 F.3d 925. 927 (9th Cir. 2011) (reasoning that rejection of a settlement offer that is greater than a jury award is probative of the amount of success) (citing with approval *Lohman v. Duryea Borough*, 574 F.3d 163, 167 (3d Cir. 2009)). The Court here reduces the fee award to roughly what it would have been had Plaintiffs accepted the May 2, 2023, settlement offer for $200,000. *See Lohman v. Borough*, 2008 WL 2951070, at *13 (M.D. Pa. 2008) (reducing a fee award to one that would be "comparable to the award Plaintiff's counsel would have received had the Plaintiff settled for the maximum settlement offer…"), *aff'd* 574 F.3d 163 (3d Cir. 2009). By the Court's rough estimation, approximately 450 hours were accrued after May 2, 2023, (*see* Fagan Decl., Docket No. 97-3 at Exh. 1, pages 48-73), so the Court also deducts that time from the fee award Plaintiffs seek. After these two deductions for padded entries and post-May 2, 2023, fees, the Court finds that the remaining amount of hours (977.9 – 117.5 – 450 = 410.4 hours) plus the 16 hours Plaintiffs sought to prepare the reply in support of the

Fees Motion represents a total reasonable expenditure of time of 426.4 hours. Multiplying 426.4 hours times $750 per hour results in a lodestar of $319,800. The fee award is significantly larger than the amount awarded to the Plaintiffs in this case, but the Court finds this $319,800 is appropriate given the additional "non-monetary results the [the Plaintiffs] achieved for [themselves] and other members of society." *Morales*, 96 F.3d at 365.

### c. Fee Enhancement

Finally, the Court finds that a lodestar upward adjustment of 0.10 is appropriate. Plaintiffs argue that this case warrants a multiplier of 1.25 due to the difficulty of the litigation, the novelty of the issues, the contingency risk, Mr. Fagan's skills, and the magnitude of the results obtained. (Fees Mot., Docket No. 97-1 at 13−20). Most of those factors have already been subsumed in the lodestar analysis above, *see Ketchum*, 24 Cal. 4th at 1139−40 (holding that courts may not impose a fee enhancement pursuant to factors "already encompassed within the lodestar"), so the court declines to rely on them to assess a large fee enhancement here. The yet unaccounted for contingency risk, however, justifies a more modest multiplier of 0.10 of the $319,800 lodestar. *See Chaudry v. City of Los Angeles*, 751 F.3d 1096, 1112 (9th Cir. 2014) (citing *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478−79 (9th Cir. 1995) ("California law allows for a multiplier of the lodestar to compensate the risk of contingent representation."); *see also Macias v. Lange*, No. 14-cv-2763-GPC-JMA, 2017 WL 2445516, at *7 (S.D. Cal. 2017) (noting the availability of the fee multiplier pursuant to FEHA in federal court). Applying the multiplier, the fee award increases to $351,780.

### d. Costs

The Court also awards non-taxable costs in the amount of $22,029.09. The FHA provides for the reimbursement of reasonable costs. 42 U.S.C. § 3613(c)(2). A

prevailing party "may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Manhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (citations omitted); *Santiago v. Equable Ascent Fin*, No. C 11-3158 CRB, 2013 WL 3498079, at *5 (N.D. Cal. Jul. 12, 2013) (noting the "general rule that attorney travel time is recoverable"). The Court accordingly declines to omit Mr. Fagan's travel expenses from the fee award as requested by Defendants, who did not cite any case law supporting the argument that such travel expenses are not recoverable. After a review of counsel's non-taxable costs, the Court concludes they are reasonable and **GRANTS** Plaintiffs' motion for non-taxable costs in the amount of $22,029.09.

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Permanent Injunction and **GRANTS** in part Plaintiffs' fee award in the amount of $351,780. The Court also awards non-taxable costs in the amount of $22,029.09. A judgment consistent with this order will concurrently issue.

Dated: February 1, 2024

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE